Dennis POLHILL, David Aitken, Charles A. Michael, Douglas Stuart Campbell, and Gary Swing, Plaintiffs–Appellants,

v.

Victoria BUCKLEY, in her official capacity as Colorado Secretary of State, Defendant–Appellee.

No. 96SA257.

Supreme Court of Colorado, En Banc.

Sept. 9, 1996.

Paul Grant, Parker, for Plaintiffs–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

■ The petitioners, Dennis Polhill, David Aitken, Charles A. Michael, Douglas Stuart Campbell, and Gary Swing, appeal an order of the Denver District Court granting the motion of respondent Victoria Buckley to dismiss the petitioners' action challenging Senate Concurrent Resolution (SCR) 95–2 as violative of the single-subject requirement contained in Article XIX, Section 2(3), of the Colorado Constitution. The district court dismissed the petitioners' action with prejudice, holding that SCR 95–2 encompasses a single subject and that, in any event, the issue was not ripe for determination. The petitioners appealed the district court's decision to the court of appeals. The court of appeals thereafter filed a request in this court for determination of jurisdiction, and we accepted the case pursuant to section 13–4–109(2), 6A C.R.S. (1987). We hold that courts lack subject matter jurisdiction to review a legislative referendum[1] for compliance with the single-subject requirement of the Colorado Constitution unless and until it has been approved by the voters. We therefore need not decide whether SCR 95–2 encompasses a single subject.

I.

In 1995, the Colorado General Assembly passed SCR 95–2, a proposed referendum on an amendment to the Colorado Constitution pursuant to Article XIX, Section 2, of the Colorado Constitution. If passed, SCR 95–2 would impose a sixty percent voter approval requirement on most future constitutional changes. SCR 95–2 would also prohibit the General Assembly from amending or repealing citizen-initiated laws within four years of enactment, unless approved by two-thirds of the members of the General Assembly. The petitioners challenged SCR 95–2 in district court, alleging that the resolution violated

1. The initiative and the referendum are two distinct processes by which the people of the State of Colorado may exercise the political power vested in them by the Colorado Constitution. Colo. Const. art. II, § 1; Colo. Const. art. V, § 1. The initiative refers to the process by which the people propose laws by petition to be submitted to the electorate for rejection or approval. Colo. Const. art. V, § 1(2); *Clark v. City of Aurora,* 782 P.2d 771, 777 (Colo.1989). The referendum is the process by which the legislature enacts a law or proposes a constitutional amendment, then refers it to the electorate for ultimate rejection or approval. Colo. Const. art. V, § 1(3); Colo. Const. art. XIX, § 2(1); *Clark,* 782 P.2d at 777.

the single-subject requirement imposed by the Colorado Constitution. The district court dismissed the petitioners' action.

## II.

Our case law embodies a strong tradition which holds that courts cannot interfere with the ongoing legislative process except in extraordinary circumstances. We have held that this court has jurisdiction to review pending legislation only when it exercises its original jurisdiction under Article VI, Section 3, of the Colorado Constitution. *City of Rocky Ford v. Brown,* 133 Colo. 262, 264–65, 293 P.2d 974, 976 (1956). Under Article VI, Section 3, we may answer an interrogatory addressing the constitutionality of legislation before final passage when the bill has passed the house of origin and the interrogatory is posed by the house of the General Assembly in which the bill is pending. *Submission of Interrogatories on Senate Bill 93–74,* 852 P.2d 1, 3 (Colo.1993). We may also respond to interrogatories from the governor concerning a bill which has been enacted by the General Assembly and is awaiting action by the governor. *See In re Interrogatory Propounded by Governor Roy Romer on House Bill 91S–1005,* 814 P.2d 875, 878 (Colo.1991). In the case before us, we cannot exercise original jurisdiction pursuant to Article VI, Section 3, of the Colorado Constitution because we have not been asked to respond to an interrogatory regarding pending legislation.

In the absence of jurisdiction pursuant to Article VI, Section 3, other possible sources of jurisdiction in this case would be the single-subject requirement itself or a statute. However, Article XIX, Section 2(3), itself does not confer jurisdiction on the courts to review proposed constitutional amendments before they are submitted to the electorate. Moreover, although section 1–40–107, 1B C.R.S. (1995 Supp.), provides for supreme court review of citizen initiatives before they are submitted to the electorate, this statute does not confer jurisdiction upon this court to review legislative referenda before they are enacted. In the absence of such statutorily conferred jurisdiction, the courts are forbidden from interfering with the referendum process before the measure has been adopted. *See McKee v. City of Louisville,* 200 Colo. 525, 530, 616 P.2d 969, 972 (1980).

In the current case, our original jurisdiction pursuant to Article VI, Section 3, of the Colorado Constitution has not been invoked. Moreover, neither the single-subject requirement itself nor any statute confers jurisdiction on the courts to review a legislative referendum before it has been adopted. We know of no authority which would allow this court or the district court to review the constitutionality of SCR 95–2 before it is enacted.

## III.

The petitioners further argue that we should review legislative referenda prior to their submission to the electorate because a violation of the single-subject requirement for a referred constitutional amendment will evade review if the proposed amendment cannot be reviewed until after it is adopted by the voters. Specifically, the petitioners point to that clause of Article XIX, Section 2(3), which states:

No measure proposing an amendment or amendments to this constitution shall be submitted by the general assembly to the registered electors of the state containing more than one subject, which shall be clearly expressed in its title; . . . .

Colo. Const. art. XIX, § 2(3). Thus, the petitioners contend that there is no remedy if a referred amendment violates the single-subject requirement but cannot be reviewed until after the measure has been adopted.

We reject this argument. The language of Article XIX, Section 2(3), is also found in Article V, Section 21, of the Colorado Constitution, which imposes the single-subject requirement on legislative bills:

No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; . . . .

Colo. Const. art. V, § 21. That language has not been found to limit the remedy which may be imposed if a bill is found to violate

the single-subject requirement. *See In re Interrogatory Propounded by Govenor Roy Romer on House Bill No. 1353,* 738 P.2d 371 (Colo.1987) (holding as unconstitutional a bill which violated the single-subject requirement). By analogy, an adequate remedy would be available to voters who challenge a referred constitutional amendment after the referendum has been approved by the electorate.

■ In an appropriate case, this court may exercise its equitable powers where no adequate remedy is provided by the administrative process. *Elkins v. Milliken,* 80 Colo. 135, 249 P. 655 (1926). However, we have refused to create additional claims for relief which are not permitted by statute. *Brownlow v. Wunch,* 102 Colo. 447, 80 P.2d 444 (1938) (holding that protestor could not intervene in mandamus action against secretary of state when statute had no provision for protesting filing or refiling of initiative petition). In the present case, an adequate remedy is available for challenging a legislative referendum because the courts can review the referendum if it is approved by the electorate. Upon post-election review, if the court determines that the referendum violates the single-subject requirement of the Colorado Constitution, then the referendum will be invalidated. This is an adequate remedy, and we will therefore not create additional claims for relief which are not permitted by statute or the Colorado Constitution.

■ Moreover, the separation of powers doctrine prohibits this court from interfering with the legislature in its referendum process. *See Speer v. People,* 52 Colo. 325, 122 P. 768 (1912). In *Speer,* this court explained the role of the legislature in the referendum process:

> In the enactment of a constitutional amendment proposed by the general assembly, ... each step must be taken as the constitution provides, yet while the measure is before it in process of legislation, the general assembly is the judge of whether the steps are being so taken and acts upon its judgment in taking them. These are all matters of legislative control and judgment while the enactment is in process of making.

*Id.* at 333, 122 P. at 770. We held in *Speer* that under the separation of powers doctrine, the judiciary's function in the referendum process is limited:

> [The judiciary cannot] directly intervene and ... say to the legislature that the legislation it is at work upon is not what it is professed to be and can not be enacted in this way, and that if it is so enacted it will be invalid.... [The courts cannot] enter this field of legislation and assume to superintend and control this matter, substitute their judgment for the judgment of the legislature, and say whether the latter may or may not proceed further, and to thus subordinate the legislative to the judicial department....

*Id.* at 334, 122 P. at 770. Thus, the separation of powers doctrine supports our conclusion that, in the absence of constitutionally or statutorily conferred jurisdiction, courts cannot interfere in the legislative referendum process by reviewing referenda before they have been submitted to the electorate. The General Assembly, in adopting any legislative referendum, has a responsibility to ensure compliance with the limitations imposed by Article XIX, Section 2(3).

## IV.

Neither the Colorado Constitution nor any statutes confer upon the courts jurisdiction to review legislative referenda before they are adopted. Moreover, an adequate post-election remedy is available, and the separation of powers doctrine prohibits judicial interference in the legislative process. We therefore hold that we have no jurisdiction to adjudicate the petitioners' claim. Because we hold that the courts do not have jurisdiction to review a referendum before it is adopted, we do not decide whether SCR 95–2 encompasses a single subject.

SCOTT, J., dissents.

Justice SCOTT, dissenting:

The plain language of Article XIX, section 2(3) expressly prohibits the *submission* to the electorate of measures that violate the single-subject requirement. That provision, which controls our deliberations here, pro-

vides: *"No measure proposing* an amendment or amendments to this constitution *shall be submitted by the general assembly* to the registered electors of the state containing more than one subject...." Art. XIX, § 2(3) (emphasis added). Despite this clear limitation on the authority of the General Assembly, the majority holds that "the Colorado Constitution [does not] confer upon the courts jurisdiction to review legislative referenda before they are adopted. Moreover ... the separation of powers doctrine prohibits judicial interference in the legislative process. We therefore hold that we have no jurisdiction to adjudicate the petitioner's claim." Maj. op. at 122.

I do not agree. Under the single-subject requirement, the people expressly limited the authority of the General Assembly when "proposing an amendment ... to ... [the Colorado] constitution." Art. XIX, § 2(3). Therefore, the fundamental question, which the majority does not address, is whether the plain language of Article XIX grants a registered elector a legal right to be free from the *submission,* as opposed to the enforcement, of referred measures that violate the single-subject requirement. Unlike the majority, I would answer that question, and do so, in the affirmative. I believe to answer otherwise ignores the plain language of Article XIX, section 2(3).

The majority's reading of the single-subject requirement prohibits a challenge until *after* the measure has been submitted to the electorate and registered electors have voted. Thus, the majority would recognize a "remedy" only after the harm has occurred. Registered electors must first suffer the wrong and endure the injury that they expressly intended to avoid before seeking redress. Because I would read the plain language of our constitution to avoid such an absurd result, I respectfully dissent.

In addition, I find the plain language of Article XIX sufficient to obligate this court to enforce the constitutionally mandated single-subject requirement equally against legislatively referred measures as well as against citizen initiatives. Moreover, I would reach the merits to avoid placing a legal cloud over an important ballot issue. By waiting until after the November election, the majority subjects the electorate to the very harm the people intended to avoid and requires opponents and proponents alike to assume the risks and unnecessary costs of opposing or supporting a measure that may be constitutionally infirm. Without significant additional burden to our docket, yet with substantial benefit to the electorate, I would reach the merits at the outset. Here, unlike the majority, I would determine whether the measure violates the single-subject requirement, and would therefore conclude that the district court has jurisdiction to hear the petitioners' action.

I

I accept the facts as set forth in the majority opinion. However, I also note that, under this record, the Colorado Secretary of State was the only party defendant before the trial court. Although initially named by the petitioners the General Assembly is no longer a party. The record reveals that, on April 23, 1996, the parties filed a stipulation for dismissal of all claims against the General Assembly and, on May 2, 1996, the trial court dismissed the claims against the General Assembly. Thus, the May 15, 1996, order of trial court addressed only the petitioners' attempt to enjoin the secretary of state. Therefore, petitioners here do not attempt to enjoin the legislative acts of the General Assembly, but rather seek to stay the hand of the secretary of state from placing the provision on the ballot and thereby submitting a measure that violates the single-subject requirement.

That the General Assembly is not a party here is important in my view. Unlike the cases relied upon by the majority, petitioners do not seek judicial action by virtue of injunctive or declaratory relief against individual legislators or the General Assembly. While I agree we are without authority to "interfere[ ] in the legislative process," maj. op. at 122, a search of this record reveals, in fact, that no such order is sought against the legislature.[1] Furthermore, it is noteworthy

1. We are not called upon here to enjoin the

actions of the General Assembly or to involve

that, at this time, the General Assembly is not engaged in the legislative process because it is not in session.[2]

## II

Next, I disagree with the majority's conclusion "that courts lack subject matter jurisdiction to review a legislative referendum for compliance with the single-subject requirement unless and until it has been approved by the voters." Maj. op. at 120.

### A

I agree with the majority that "[o]ur case law embodies a strong tradition which holds that courts cannot interfere with the ongoing legislative process except in extraordinary circumstances." Maj. op. at 121; *see Bledsoe*, 810 P.2d at 208. The majority cites *City of Rocky Ford v. Brown*, 133 Colo. 262, 264–65, 293 P.2d 974, 976 (1956), for the proposition that this court has jurisdiction to review pending legislation only pursuant to Article VI, section 3 of the Colorado Constitution, which provides for the submission of interrogatories by either the governor or the General Assembly. In my view, we are not called upon to intervene in the legislative process.

Here, we are reviewing not a legislative enactment, but rather the process and procedure of amending the Colorado Constitution. These two procedures, *i.e.*, the legislative process and the procedure for amending our constitution, by their very nature, are distinguishable. Thus, while helpful, the general principles of the separation of powers doctrine applied to legislative matters and relied on by the majority are not necessarily applicable here. For example, in the process of legislative enactments, the electorate is not involved. In contrast, however, the amenda-

the judiciary in legislative affairs, but rather are called upon to stay the hand of the secretary of state from submitting to the registered electors a measure that violates the single-subject requirement in derogation of the plain language of Article XIX. Thus, we will not impermissibly "entangl[e] the judiciary in legislative affairs." *Colorado Common Cause v. Bledsoe*, 810 P.2d 201, 213 (Colo.1991) (Lohr, J., concurring in part and dissenting in part).

tory process cannot be accomplished without citizen involvement.

Moreover, I recognize and agree that, for reasons noted by the majority, citizens could not interfere with the process of the General Assembly in considering and adopting the proposed referendum. *See Speer v. People*, 52 Colo. 325, 332, 122 P. 768, 770 (1912). However, the General Assembly is not a party to this action. We are asked only, in the context of the procedure by which we amend the Colorado Constitution, to enjoin the secretary of state from placing this measure on the ballot. The clear and unambiguous language of Article XIX permits such action. Because we must harmonize all provisions of the constitution and give each provision its appropriate meaning and effect, *People ex rel. Murphy v. Field*, 66 Colo. 367, 370, 181 P. 526, 527 (1919), I would conclude that the amendatory process, which necessarily must include registered electors, is subject to our review to the extent necessary to preserve the right of registered electors as set forth in Article XIX.

By analogy to the legislative process, the majority does not fully address the role of the people, as registered electors, in the process by which our constitution is amended. While registered electors do not directly participate in the legislative process, having granted full authority in that sphere to the General Assembly and the governor, they are paramount and essential in the process of amending our constitution. Consequently, provisions intended to protect the rights of the people in the amendatory process should be recognized by this court.

### B

Even assuming that the act of the secretary of state of placing the measure on the

2. *See* Colo. Const. art. V, § 7. I am not unmindful that the Governor can, under our constitution, call the General Assembly into emergency session; however, without such an action by the Governor, the term of the General Assembly has expired.

ballot is part of the legislative process, I nevertheless would conclude that Article XIX amounts to an extraordinary circumstance or exception that gives this court jurisdiction to review the measure.

" 'It is an exceedingly delicate matter for the courts to interfere by injunction with the action, or contemplated action, of a legislative body ... and such interference cannot be justified, except in extreme cases and under extraordinary circumstances.' " *City of Louisville v. District Court*, 190 Colo. 33, 37, 543 P.2d 67, 70 (1975) (quoting *Lewis v. Denver City Waterworks Co.*, 19 Colo. 236, 242, 34 P. 993, 995 (1893) (emphasis omitted)).

The majority relies on *City of Rocky Ford*, 133 Colo. at 264–65, 293 P.2d at 976, for the proposition that "this court has jurisdiction to review pending legislation only when it exercises its original jurisdiction under Article VI, section 3 of the Colorado Constitution." Maj. op. at 121. The majority therefore concludes that "we cannot exercise original jurisdiction pursuant to Article VI, section 3 of the Colorado Constitution because we have not been asked to respond to an interrogatory regarding pending legislation." Maj. op. at 121.

In *City of Rocky Ford*, we determined that "neither this, nor any other court, may be called upon to construe or pass upon a legislative act until it has been adopted. The *only* exception to this rule is the constitutional provision authorizing the legislature to propound interrogatories to the supreme court upon important questions upon solemn occasions." 133 Colo. at 265, 293 P.2d at 976 (emphasis added). Although we held in *City of Rocky Ford* that the only constitutional provision which constituted a sufficient exception or extraordinary circumstance was interrogatories propounded pursuant to Article VI, section 3, that case was decided before Article XIX was enacted. At that time, the single-subject requirement was beyond the contemplation of the court. In my view, like the extraordinary circumstance or exception that existed by virtue of Article VI, section 3, the single-subject requirement of Article XIX, section 2(3), by its unambiguous terms, is a constitutional provision that cre-

ates a circumstance sufficiently extraordinary to establish jurisdiction in this court.

The first sentence of Article XIX, section 2(3) demands reiteration in light of the majority's holding. "*No measure proposing an amendment or amendments to this constitution shall be submitted by the general assembly to the registered electors of the state containing more than one subject ....*" (Emphasis added.)

"We have recognized that, when construing a constitutional amendment ... our goal is to determine and give effect to the will of the people in adopting the measure." *Bolt v. Arapahoe County Sch. Dist. No. Six*, 898 P.2d 525, 532 (Colo.1995); *Urbish v. Lamm*, 761 P.2d 756, 760 (Colo.1988). To accomplish this purpose, the terms used should be given their ordinary and popular meaning. *Bolt*, 898 P.2d at 532. "Any interpretation which results in an unreasonable or absurd result should be avoided." *Id.*; *Bickel v. City of Boulder*, 885 P.2d 215, 229 (Colo.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995). "[U]nless mandatory, no interpretation of constitution or statute will be accepted which results in a palpable absurdity." *Mahood v. City & County of Denver*, 118 Colo. 338, 340, 195 P.2d 379, 380 (1948).

Here, contrary to the ordinary and popular meaning of "submitted," the majority construes this term to mean after the measure has been "adopted" or voted on and passed. The majority holds that the electorate may not protest a single-subject violation until after a measure is passed. However, our constitution is clear: Article XIX legally protects the electorate from the *submission* of amendments that violate the single-subject requirement. In light of the plain language of that amendment, I find that the majority's rationale leads to an absurd result, which we are duty bound to avoid. *Mahood*, 118 Colo. at 340, 195 P.2d at 380.

The electorate should not have to wait until a measure is submitted *and passed* to seek the protection contemplated. This is especially true where the injury that the constitution expressly attempts to avoid in

fact occurs at the time of submission, as opposed to enactment. Such a result is not only absurd, but is also inefficient because it creates additional and substantial burdens on and expense for the electorate. No further development of the record is necessary for us to determine whether a proposed measure is in compliance with or violates the single-subject requirement. Thus, pursuant to the terms of Article XIX, I would hold that this court has jurisdiction to consider the measure before it is submitted and passed by the electorate.

### C

In addition to the text of Article XIX, section 2(3), the context of its adoption by the electorate militates against a conclusion that the measure must be submitted before upholding its protections. For example, the ballot title for the referred measure in 1994, now set forth in Article V and Article XIX of our constitution, states as follows:

> REFERENDUM A—SINGLE SUBJECT FOR INITIATIVES AND REFERENDA BALLOT TITLE: AN AMENDMENT TO ARTICLES V AND XIX OF THE CONSTITUTION OF THE STATE OF COLORADO, REQUIRING THAT ANY MEASURE PROPOSED BY INITIATIVE OR REFERENDUM BE CONFINED TO A SINGLE SUBJECT.

Legislative Council of the Colo.Gen.Assembly, *An Analysis of 1994 Ballot Proposals,* Research Pub. No. 392 at 2 (1994) (*An Analysis of 1994 Ballot Proposals* ).

Also in *An Analysis of 1994 Ballot Proposals,* the Legislative Council "blue book," we find the following:

**Background**

> This proposal requires that initiated or referred amendments to the Colorado Constitution and to the statutes of the state of Colorado embody only one subject.
>
> . . . .
>
> The type of proposals submitted by the legislature in recent years to remove obsolete provisions from the constitution might be considered to contain more than one

subject. Under Amendment A, these *ballot issues might not have been allowed unless they were changed* to reduce their scope.

*Id.* at 2–3 (emphasis added). The suggestion that non-complying ballot issues "might not have been allowed" supports the conclusion that the secretary of state can be enjoined from placing a referred measure on the ballot. The discussion by the legislative council continues:

**Arguments For**

> 1) This proposal will help *keep unrelated or misleading provisions out of initiated and referred measures to be voted on* by the people. The practice of "log-rolling" or "Christmas-treeing" results in ideas, which probably could not pass on their individual merits, being made parts of a larger proposal that is likely to pass. Further, the proposal will protect against unexpected provisions that may be contained in a proposal. *Voters, after an election, should not be saying, "I didn't know that provision was in that ballot issue,"* which is a potential result of having more than one topic in a proposal. Proponents of initiated proposals, and *the General Assembly with referred measures, should be required to present coherent ideas for change* rather than roaming through Colorado law selecting a change here and another change there.
>
> . . . .

**Arguments Against**

> . . . .
>
> 4) *This amendment will inhibit the ability of citizens and the legislature to present comprehensive revisions in Colorado law to the voters.*

*Id.* at 3–4 (emphasis added).

From this context, it is clear that the amendment was designed to constrain the General Assembly, rather than to empower it. Moreover, it is only reasonable to conclude the voters were fully aware of and intended that the single-subject requirement would apply to referred measures with or without legislative action.[3]

---

**3.** Article XIX does not prohibit the General As-

sembly from enacting procedural mechanisms

## III

### A

The majority also states that "In the absence of jurisdiction pursuant to Article VI, section 3, other possible sources of jurisdiction in this case would be the single-subject requirement itself or a statute." Maj. op. at 121. From this, the majority implies that citizens must possess a statutory mechanism crafted by the General Assembly before seeking review by this court to obtain protection expressly provided by their constitution. No such requirement exists in our law.

Indeed, this court previously has recognized and heard citizen petitions seeking protections guaranteed by our constitution. In the past, we have upheld judicial orders issued to protect citizens on numerous occasions without demanding that a statute confer jurisdiction upon this court. *See, e.g., Conrad v. City & County of Denver,* 656 P.2d 662, 667 (Colo.1982) (holding taxpayers have standing to seek a declaratory judgment that Denver's nativity scene violated the state constitutional prohibition against granting a preference for any religious denomination or mode of worship); *Dodge v. Department of Social Servs.,* 198 Colo. 379, 380, 600 P.2d 70, 71 (1979) (recognizing taxpayers' right to challenge expenditure of public funds in violation of constitutional provision). We also have not required congressional or state legislative action to enforce federal constitutional rights. *See Evans v. Romer,* 882 P.2d 1335 (Colo.1994), *aff'd,* — U.S. —, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The right and protection provided under the single-subject requirement should elicit a similar response when properly raised.

The majority collapses the mandate of Article XIX, section 2(3) into Article V, section 21 in order to argue that the registered electors have a sufficient remedy after a measure is enacted, and consequently after the injury has been suffered at the point of submission. However, the articles of our constitution have distinct purposes and all should be harmonized, not merged together so as to defeat any one purpose. I believe that the majority's holding here defeats the specific purpose of Article XIX.

Moreover, I do not read Article XIX to require that the rights guaranteed to registered electors are limited by any authority of the General Assembly to determine "[t]he manner of exercising said [initiative and referendum] powers ... by general laws" under Article V, section 1(9). The rights created by Article XIX are *sui generis* and not in *pari materia* with Article V. *People ex rel. Moore v. Perkins,* 56 Colo. 17, 137 P. 55 (1913). In my view, Article XIX does not grant the General Assembly authority to determine whether registered electors may be subjected to referenda that violate the single-subject requirement by either adopting or failing to adopt specific statutory provisions.

I would simply hold that, with or without legislative action, Article XIX creates a right in registered electors to be free from measures that violate the single-subject requirement. To the contrary, however, the majority recognizes an authority that the constitution simply does not grant to the General Assembly and, as a consequence, diminishes the rights of the people created by the single-subject requirement of our constitution.

### B

While our initial premise must be that the power of the legislature is plenary, that power is nevertheless subject to express limitations found in our constitution. *Colorado General Assembly v. Lamm,* 704 P.2d 1371, 1381 (Colo.1985); *see also Reale v. Board of Real Estate Appraisers,* 880 P.2d 1205, 1208 (Colo.1994) (recognizing that "the Colorado Constitution is a limitation on the power of the legislative branch...."). Moreover, when a dispute arises concerning the respective functions of the different branches of government, it is the province of the judiciary to say what the law is, and this duty may not be avoided simply because the parties are coordinate branches of government. *See Barnes v. Kline,* 759 F.2d 21, 26–27 (D.C.Cir. 1985), *vacated as moot sub nom. Burke v.*

---

for single-subject compliance. Nevertheless, the General Assembly's failure to enact such legislation does not bar a registered elector's right to enjoin the submission of referenda that violates the single-subject requirement.

*Barnes,* 479 U.S. 361, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987); *Colorado Common Cause v. Bledsoe,* 810 P.2d 201, 206 (Colo. 1991).

The separation of powers doctrine is implicated whenever the legislative process is interfered with by the executive or judiciary. Here, however, the legislative process culminated with the adoption of the referred measure by both houses of the General Assembly. At that stage, the General Assembly, which is not currently in session, completed its work and the legislative process terminated.

In addition, we should not lose sight of the purpose of the separation of powers doctrine, *i.e.,* to avoid the concentration of power in any one branch of government and thereby prevent the arbitrary assumption or transfer of authority. *See* Harold H. Bruff, *Separation of Powers Under the Texas Constitution,* 68 Tex.L.Rev. 1337, 1356–57 (1990). That purpose is not placed in jeopardy nor are core legislative functions threatened when the judiciary acknowledges explicit rights of the people and acts to ensure protections the people have retained with the expectation of limiting the authority of government and, in particular, the General Assembly.

Here, Article XIX has forbidden the General Assembly from submitting measures "proposing an amendment ... to [the Colorado] constitution" that violate the single-subject requirement. To the contrary, the majority has granted the General Assembly the apparent authority to avoid this express command of our constitution.

### IV

Article XIX is a constitutional provision evincing the will of the people to be free from the submission of measures that violate the single-subject requirement, whether initiated by citizens or referred by the General As-

sembly. It thus constitutes an extraordinary circumstance that creates jurisdiction in our district courts to enforce the rights created therein, *i.e.,* to prevent the submission to the registered electorate of legislative referenda that violate the single-subject requirement.

The majority requires legislative action to protect citizens from the potential evils of referred measures that violate the single-subject requirement. What, one may ask, becomes of this right should the General Assembly never act? [4]

Under the majority opinion, the General Assembly can adopt future legislation to recognize the rights expressed within the plain language of Article XIX. However, the context and text of the amendment we construe makes plain the intent of the people and the rights they understood to exist upon passage of the 1994 referred measure. Finally, I note the burden of uncertainty and the unnecessary costs and risks the majority's decision places upon the election process: Not only may registered voters be confused, or torn between two or more subjects contained in one ballot issue, but they now also may be required to support and oppose, unnecessarily, a measure we may later strike down because it violates the single-subject requirement. These concerns, I believe, the people quite rightly intended to address by amending our constitution in 1994.

Accordingly, I respectfully dissent.

---

**4.** One might ask, what becomes of a right deferred—especially one deferred indefinitely. By analogy, I am reminded of a poem by Langston Hughes, one of this nation's leading poets:

> What happens to a dream deferred?
> Does it dry up
> Like a raisin in the sun?
> Or fester like a sore—
> And then run?
> Does it stink like rotten meat?

> Or crust and sugar over—
> Like a syrupy sweet?
> Maybe it just sags
> Like a heavy load.
> *Or does it explode?*

Langston Hughes, *Harlem (Montage of a Dream Deferred), in* The Collected Poems of Langston Hughes 426 (Arnold Rampersad & David Roessel eds., 1995); *see also* Lorraine Hansberry, Raisin in the Sun: A Drama in Three Acts 3 (1959).