No. 15,805.

PEOPLE EX REL. CHEYENNE SOIL EROSION DISTRICT
v. PARKER ET AL.
(192 P. [2d] 417)

Decided March 22, 1948.

14

Mr. Thorton H. Thomas, Jr., Mr. John C. Young, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Wallace S. Porth, Assistant, for defendant in error State Board; Mr. Viggo H. Johnson, Mr. George A. Doll, Mr. Arthur C. Gordon, for the other defendants in error.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

This is an action in the nature of quo warranto brought by the people of the state of Colorado upon the relation of Cheyenne Soil Erosion District, a public corporation organized under the Colorado Soil Conservation Act, as amended, against Joe Parker and numerous other individuals either as owners of land in the district, or as holders of proxies for such owners, or as officers and members of the Cheyenne County Improvement Asso-

ciation or as members of the State Soil Conservation Board.

The principal object of this action is to have certain provisions of the 1945 amendment of the act declared invalid, and to set aside the proceedings relating to the resubmission of the district land use ordinance, to order the ballots recounted, retallied and recanvassed, and the enforcement of said ordinance enjoined.

The Colorado Soil Conservation Act was adopted in 1937 and is set forth in chapter 241 of the Session Laws of that year. The act was amended by chapter 160, S.L. '39, by chapter 203, S.L. '41, and by chapter 229, S.L. '45. It is the validity of the last amendment, to which reference is made as House Bill 377, which is involved in this action.

The relator, Cheyenne Soil Erosion District, was originally organized pursuant to the provisions of the above act, August 9, 1940. February 14, 1945, the board of supervisors of the district, adopted a land use ordinance which was later approved by the qualified voters March 10, 1945. Thereafter, May 3, 1945, the General Assembly adopted, and the Governor approved, House Bill 377, which provided in substance, inter alia: That the eligibility of any landowner to vote on any matter concerning the district shall be limited to landowners whose title is of record; that a favorable vote of seventy-five per cent shall be required in adopting land use ordinances; that all rules, regulations and ordinances in existence at the time of the passage of said amendment are declared to be void and of no force or effect forty-five days after the effective date of the amendment unless the same was readopted in the interim by the qualified voters.

As a result of the above amendment, the ordinance above mentioned, adopted as aforesaid March 10, 1945, became null and void forty-five days after May 3, 1945, being to wit, June 18, 1945, unless readopted prior there-

to by seventy-five per cent of the qualified voters, as by the amendment provided.

In compliance with the provisions of said amendment, the board of supervisors repassed the former land use ordinance May 5, 1945, subject to the readoption thereof by the qualified voters of the district at a special election to be held June 16, 1945, called for such purpose.

The ballots cast at said election were duly counted and canvassed by the board of supervisors at its meeting held June 16, 1945, and the returns certified by said board: that 136 votes were cast for, and 327 votes cast against, the readoption of said land use ordinance.

At the trial it was stipulated by the parties that the "entire election procedure" at the election held June 16, 1945 "was valid"; that "all of the landowners of record who presented themselves to vote either in person or by proxy were permitted to vote"; "that the only issue to be determined upon the trial as to the proper passage of House Bill No. 377, is whether the amendment to said bill made in the Senate on Second Reading was concurred in by the House"; that relators' Exhibits 1 to 16 inclusive "be admitted * * * for all purposes and proof thereof waived."

This case was tried upon the above stipulation, and upon the testimony submitted by the relators. At the close of said testimony the respondents moved for a summary judgment of dismissal of the action, upon the ground, inter alia, that "The facts as agreed upon at the pretrial conference, held on August 31, 1945, and as introduced in evidence by the plaintiff at the trial, including the evidence introduced today, fail to establish or prove any cause of action in favor of plaintiff, and, on the contrary, show that the plaintiff has no cause of action."

The motion for summary judgment and dismissal of the action was sustained by the trial court, and judgment was entered thereon which is now here for review on writ of error.

The principal question for decision is whether or not the trial court erred in granting the motion for summary judgment. Thirty-three separate points are specified upon which relator relies for reversal. Many of them are so general in their nature as to require no consideration under our rules, others are wholly without merit, and many of them are so repetitious that it is difficult to determine therefrom the real issues in the case. In relation thereto, however, relators state in their brief that said specifications of points, "Collectively * * * raise issues as to: (1) Whether in passing the act there was a violation of sections 22 and 23, Article V, of the Constitution. (2) Whether paragraph 5 of Section 9 of Chapter 229 of the Session Laws of Colorado, 1945, (page 633) violates Section 11 of Article II of the Constitution of Colorado. (3) The proper construction of the Act. (4) The constitutionality of acts done and permitted pursuant to powers found by the District Court, and as the District believes erroneously found, to be conferred by the Act."

The above issues are discussed in the brief of relators under the following headings: "Violations of section 1, article V, of the Constitution. Violations of section 1 of article VII of the Constitution. Violations of section 25 of article V of the Constitution. The validity of votes by proxy [Sec. 11, Art. VII of the Constitution]. Retrospective legislation. [Sec. 11, Art. II of the Constitution]. Construction of the act as amended in 1945."

Section 1, article V of the Constitution, vests in the General Assembly all legislative power of the state, reserving to the people the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the General Assembly and also to approve or reject at the polls any act or part of act of the General Assembly, by a majority of the votes cast thereon.

Section 9 (a) (3) of the 1945 amendment provides for the submission of land use ordinances to the qualified

voters of the district and requires a favorable vote of seventy-five per cent for adoption therof. Relators contend that the submission of such ordinance constitutes a referendum and that this provision of the act is contrary to the constitutional provision which requires a mere majority vote to adopt referred measures. The above constitutional provision relates to referendum concerning "any act, item, section or part of any act of the general assembly." Neither was the submission of said ordinance initiated by five per cent of the legal voters of the state nor by the general assembly as the Constitution provides. Initiated petitions, under the Constitution, are required to be "addressed to and filed with secertary of state" within "ninety days after the final adjournment of the session of the general assembly, that passed the bill on which the referendum is demanded." The provision of the Constitution to the effect that referred measures are adopted by a majority vote expressly relates to "all elections on measures referred to the people of the state," and requires such elections "be held at the biennial regular general election."

The above recitals clearly indicate that the election in the soil erosion district for which provision is made, was not such an election as was contemplated by the constitutional provision. The relators, however, insist that the last paragraph of section 1, article V, of the Constitution, applies to soil erosion districts. This paragraph reserves referendum powers "to the legal voters of every city, town and municipality as to all local, special and municipal legislation of every character in or for their respective municipalities."

It is thoroughly settled that a district such as the one here involved, is a public corporation, but not a city, town or municipality within the meaning of the constitutional porvision. The purposes of the district, as expressly set forth in the act, are, as the trial court expressly found, primarily of a private nature for the mutual benefit of the landowners of the distrcit. *Hol-*

*brook Irrigation District v. First State Bank,* 84 Colo. 157, 268 Pac. 523; *Interstate Trust Co. v. Montezuma Valley Irrigation District,* 66 Colo. 219, 181 Pac. 123; *Colorado Investment & Realty Co. v. Riverview Drainage District,* 83 Colo. 468, 266 Pac. 501; *Sullivan v. Blakesley,* 35 Wyo. 73, 246 Pac. 918; *Logan Irrigation District v. Holt,* 110 Colo. 253, 133 P. (2d) 530; 43 C.J., p. 72, §11.

Further, the above constitutional article vests in the legal voters of cities, towns and municipalities the authority to "provide for the manner of exercising the initiative and referendum powers as to their municipal legislation." The record here fails to disclose any effort whatever on the part of the voters of the district to provide for the manner of exercising such powers, which no doubt they would have done if they had considered the district a municipality within the purview of the above constitutional provision.

The initiative and referendum provisions of the Constitution as set forth in section 1, article V, were adopted by the people at the general election in 1910. The general assembly in 1913, obedient to the constitutional mandate, passed an act concerning the initiative and referendum and therein provided the manner of exercising such powers by cities, towns, and municipalities. '35 C.S.A., c. 86, §§14, 15, 16. An examination of the above sections convinces us that the legislature did not consider such districts as here under consideration, a city, town or municipality. It therefore appears that the relator, the legislature, and the trial court all reached the same conclusion that the Cheyenne Soil Erosion District is not a municipality within the meaning of the constitutional provisions. This conclusion is fortified by the further fact that the legislature has taken no steps whatever to classify a soil erosion district as a municipality, city or town, as it is required to do under the Constitution.

It is next contended that the 1945 amendment violates section 25, article V, of the Constitution, which

prohibits the passage of local or special laws by the General Assembly, and section 1, article VII, of the Constitution, which defines the qualifications of voters, in that the right to vote upon the adoption of land use ordinances was, by the amendment, extended to non-residents, corporations and others. It is argued in this connection that special privileges are accorded by the act to corporations and nonresidents in such land use elections, contrary to section 25, id., since such corporations and nonresidents are not qualified to vote under section 1, id. It is further contended that such elections are included in the phrase "all elections" as used in said section 1. Also it is contended that said amendment violates section 11, article VII, in that it permits proxy voting at district elections and in so doing, the legislature has failed in its constitutional duty to "pass laws to secure the purity of elections, and guard against abuse of the elective franchise."

There is no merit in any of the above contentions. The relator's argument in support thereof stems from a misconception of the nature and character of the district, the purposes thereof, and also from an erroneous interpretation of the constitutional provisions under consideration.

We have heretofore shown that the relator is a public corporation and not a municipal corporation. The so-called election upon the question of adopting land use ordinances is not an election within the constitutional provision, but is more in the nature of an election held by the stockholders of a private corporation in the management of its affairs. The questions as to whether or not a voter at such election is a "qualified elector," whether he may vote by proxy, or whether such voter is a corporation or an individual, or whether he resides in Colorado or elsewhere, are wholly immaterial. The relator, as the trial court found, was primarily organized for the benefit of the owners of the land in the district. The owners' interests are in no way affected by their

place of residence. They have a legal right to own real estate in Colorado regardless of their place of domicile and to take all legal means for the improvement and protection of such property. Their right to vote for or against the creation of a district, or for or against the adoption of land use ordinances, springs from ownership of land.

■ The general character of soil erosion districts and the object and purposes thereof, and the nature and extent of the authority of the district over private property in the district, is shown by the following resume of such powers and duties set forth in detail in section 8 of the act as amended. The district is authorized under the act to conduct surveys, investigations and research relating to soil conservation and of preventive and control measures needed; to conduct demonstrational projects; to erect and maintain structures and facilities for the prevention of erosion; to enter into agreements with governmental agencies in carrying on erosion control activities; to acquire by purchase or otherwise, real or personal property; to make available to landowners, agricultural and engineering machinery and equipment, fertilizer, seeds and seedlings, and other material for the prevention and control of soil erosion; to enter upon private lands of the district for the treating of same for the purpose of preventing the spread of erosion; to borrow money and pledge the credit of the district; to take over and administer soil erosion projects; to sue and be sued in the name of the district; to prepare rules and regulations in providing a system for the care, treatment and operation of the lands within the district; "To estimate the probable cost of operating the district and putting into effect the rules and regulations adopted theretofore and the system for the care, treatment and operation of the lands within the district; and on the basis of such estimate to prepare a budget and to distribute the amount thereof over the lands of the district in proportion to the benefits which the re-

spective tracts will, in the judgment of the supervisors, receive from the operation of the district, but in no event shall the assessment against any lands be in excess of the reasonable value of the benefits to such lands; provided, however, that no general tax or assessment shall be levied against the lands of the district for any purpose until and unless such levy and the rate or amount thereof shall have been authorized by a majority vote of the qualified voters at a regular or regularly called special meeting of the district."

The act provides for penalties not exceeding one hundred dollars to be imposed against owners of property for their failure to perform the conditions contained in land use ordinances and for violating any provisions of the act, and it is made the duty of district attorneys to prosecute for such violations.

Among the conditions imposed by the land use ordinance passed by the board of supervisors and submitted to the voters at said election, is, that the land which is in sod at the time of the passage of the ordinance "shall not be plowed, broken out or used for the production of any crop other than a biennial or perennial grass" without the approval of the board of supervisors. Upon application for such approval, the ordinance provides, the board must determine the use capability class to which the land belongs. If the land falls within Class I, the board shall approve the use of the land "without requiring any special practices in connection therewith." If the land is classified as Class II, the owner is required to comply with "the practices recommended for the care and treatment of such lands to eliminate wind and water erosion." If the land falls within Classes III to VIII, inclusive, the supervisors "shall disapprove the application to plow and otherwise cultivate the land unless they determine that such disapproval would cause great practical difficulties or unnecessary hardship." Power is conferred on the board by the ordinance to enforce the provisions of the ordi-

nance by all proper means, and through court proceedings, if necessary.

Under the presented circumstances it is inconceivable that the above program could be established, the objects accomplished, the restrictions imposed, the owner completely divested of all management and control of his land, taxes and assessments levied for alleged benefits to the land, all without his consent or even an opportunity to be heard with respect thereto, merely because such owner happens to be a corporation or nonresident of the state. Relator's counsel in this connection say in their brief: "In the first place, the fundamental purpose of the Soil Conservation Act is to give to the people in any area within the state of Colorado a means or agency through which the damage to the soil and natural resources by reason of wind or water erosion can be minimized or eliminated." If, as counsel say, the fundamental purpose of the act is to minimize and eliminate damage to land from soil erosion, the landowner, whether a corporation or an individual, and regardless of place of residence, has a legal right to a voice therein.

Counsel also state in their brief that: "The fundamental question in this case is the question of the right of the legislature to delegate to nonresidents of the state of Colorado and to other persons not eligible to participate in governmental and political elections, the right to have a voice in the determination of the exercise of the police power of the state."

It is quite apparent from what has been said above that no attempt was made by the legislature in the act to "delegate to nonresidents" any authority whatsoever. Such nonresidents and corporations, by virtue of their ownership of lands in the district, already possessed the right, power and authority to do everything concerning their lands which is contemplated or authorized by the ordinance, before the act was passed. If the relator's contention was adopted, nonresidents and corporations

would be deprived of their right to manage their property and to determine its use and capability.

The contention that the provisions in the 1945 amendment declaring previous regulations void and requiring resubmission of the land use ordinances to the voters, is unconstitutional as being retrospective legislation, is also without merit, and is fully disposed of by our conclusions hereinabove set forth. Complete answers to all of relator's contentions, and full justification for our conclusions herein will be found in the following authorities: *Mayor of Valverde v. Shattuck,* 19 Colo. 104, 34 Pac. 947; *People ex rel. v. Earl,* 42 Colo. 238, 94 Pac. 294; *People ex rel. v. Milan,* 89 Colo. 556, 5 P. (2d) 249; *Oregon-Wisconsin Co. v. Coos County,* 71 Ore. 462, 142 Pac. 575; *Coggeshall v. City of Des Moines,* 138 Ia. 730, 117 N.W. 309; *Woodley v. Town Council of Clio,* 44 S. C. 374, 22 S.E. 410; *Holbrook Irrigation Dist. v. First State Bank, supra; Sullivan v. Blakesley, supra; Wheeler v. Herbert,* 152 Cal. 224, 92 Pac. 353; *Barber v. Galloway,* 195 Cal. 1, 231 Pac. 34; *People ex rel. v. Reclamation District,* 117 Cal. 114, 48 Pac. 1016; *Bliss v. Hamilton,* 171 Cal. 123, 152 Pac. 303; *Board v. Peterson,* 64 Ore. 46, 128 Pac. 837; *State ex rel. v. Hanson,* 80 Neb. 724, 115 N.W. 294; *Potter v. County of Santa Barbara,* 160 Cal. 349, 116 Pac. 1101; *Tarpey v. McClure,* 190 Cal. 593, 213 Pac. 983; 29 C.J.S. Elections, 11, §1; 43 C.J., 72, §11.

The judgment of the trial court is accordingly affirmed.

Mr. Justice Hilliard dissents.