**COUNTY ROAD USERS ASSOCIATION, Earl Beasley, and F.T. Havens, Plaintiffs–Appellants,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ARCHULETA, Colorado, and The Town of Pagosa Springs, a municipal corporation, Defendants–Appellees.**

No. 97CA2035.

Colorado Court of Appeals, Div. IV.

Dec. 24, 1998.

As Modified on Denial of Rehearing May 27, 1999.

Certiorari Granted in Part Nov. 1, 1999.

Abadie & Zimsky, LLC, William E. Zimsky, Durango, for Plaintiffs–Appellants.

Larry W. Holthus, Archuleta County Attorney, Pagosa Springs, for Defendant–Appellee Board of County Commissioners.

Collins and Cockrel, P.C., Robert G. Cole, Paul C. Rufien, Denver, for Defendant–Appellee Town of Pagosa Springs.

Opinion by Judge ROY.

In this mandamus action, plaintiffs, County Road Users Association (Association), Earl Beasley, and F.T. Havens, appeal from the summary judgment entered in favor of defendants, the Archuleta County Board of County Commissioners (Commissioners) and the Town of Pagosa Springs (Town). We reverse and remand with directions.

The facts are essentially undisputed. Archuleta County (County) adopted a county wide sales tax as authorized by § 29–2–103, C.R.S.1998, and in accordance with § 29–2–104, C.R.S.1998. Section 29–2–104(1), C.R.S. 1998, provides as follows:

A proposal for a county wide sales tax, use tax, or both shall be referred to the registered electors of the county either by resolution of the board of county commissioners or by petition initiated and signed by five percent of the registered electors of the county.

The present tax is the product of three separate referrals to the electors by resolution of the Commissioners. The tax rate is 4%, with 50% of the revenues distributed to the general fund of the Town, and 50% to the general fund of the County.

The Association sought to amend the distribution formula to require distribution of 25% of the revenue to the general fund of the Town and 75% to the County, with ⅔ of the County's share designated for road improvement and ⅓ to the general fund.

On June 1, 1995, the Association, acting pursuant to §§ 1–40–102(3) and 1–40–106(2), C.R.S.1998, submitted for approval to the Archuleta County Clerk and Recorder the text of a ballot issue and a submission clause and ballot title. On June 20, 1995, the Archuleta County Title Board, consisting of the Commissioners and the Clerk and Recorder, approved the ballot title. On June 22, 1995, the Clerk and Recorder approved the petition form with minor alterations pursuant to § 1–40–113, C.R.S.1998, and authorized its circulation.

On August 3, 1995, the Association submitted signed petitions to the Clerk and Recorder for verification as required by §§ 1–40–

109(2) and 1–40–113(3), C.R.S.1998, indicating that the proposal related to "Article 2 of Title 29, C.R.S., 'County and Municipal Sales and Use Tax.' " On August 9, 1995, the Clerk and Recorder reported that she had verified that the petitions bore the requisite number of signatures and issued her certification to that effect.

The Commissioners rejected the petition as insufficient, concluding that it failed to comply with the provisions of § 29–2–101, et seq., C.R.S.1998. Furthermore, the Commissioners concluded that § 29–2–104, C.R.S. 1998, is unconstitutional and that, even if constitutional, it authorizes an initiative power only for the adoption of new ordinances imposing new taxes and does not authorize the use of the initiative power to amend existing ordinances. Consequently, the Commissioners passed a resolution refusing to submit the petition to the registered electors of the County.

The Association filed this action against the Commissioners pursuant to C.R.C.P. 106(a)(2) seeking an order in the nature of mandamus to compel the Commissioners to place the proposal on the ballot and also an order awarding costs. The Association alleged that the Commissioners had failed to perform a mandatory ministerial duty prescribed under § 29–2–104(4), C.R.S.1998. Both parties moved for summary judgment. The Town then moved, and was permitted, to intervene as a defendant to protect its interests.

The trial court denied the Association's motion for summary judgment and costs. The Association then took an immediate appeal which was dismissed for lack of a final order, and the matter was remanded to the trial court for further proceedings.

Upon remand, the Town filed a motion for summary judgment which incorporated the Commissioners' prior unresolved motion. The Town argued that mandamus was an unavailable remedy, that the petition was legally defective under § 29–2–101, et seq., and that the proposal was not a sales tax proposal under the statute. The trial court granted the Commissioners' motion for summary judgment for the reasons set forth in

the Town's motion and dismissed the complaint. This appeal followed.

I.

■ The Association contends that the trial court erred in denying its request for a writ of mandamus. It asserts that § 29–2–101, et seq., mandate that upon being presented with the county clerk's certification that a petition contains the requisite signatures of 5% of the electorate, the Commissioners have a duty to refer the petition to the electorate for a vote. We agree.

At the outset, we note that the power of initiative and referendum is not generally reserved to the electors as to county governments. The Colorado Constitution grants legislative power to the General Assembly with a reservation to the people of the powers of initiative and referendum. Colo. Const. art. V, §§ 1(1),(2),(3). These reserved powers are "further reserved to the registered electors of every city, town, and municipality as to all local, special, and municipal legislation...." Colo. Const. art. V, § 1(9). The powers reserved in the Constitution are broad and inclusive.

The General Assembly has not seen fit to extend this, or a similar, reservation of legislative power to the electors of counties by statute. By § 1–41–103(2), C.R.S.1998, the General Assembly has, however, provided for a limited power of initiative and referendum with regard to "local government" as, and to the extent, required by Article X, § 20 of the Colorado Constitution, and, by § 29–2–104, it has provided for the adoption of county wide sales tax ordinances.

■ A writ of mandamus is appropriate to compel a governmental body to perform an official act specifically required by law. C.R.C.P. 106(a)(2); *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977).

■ In considering whether to issue a writ of mandamus, Colorado courts have generally applied a three-part test: (1) a plaintiff must have a clear right to the relief sought; (2) the agency must have a clear duty to perform the act requested; and (3) there must be no other available remedy. *Sherman v. City of Colorado Springs Planning*

*Commission,* 763 P.2d 292 (Colo.1988). Mandamus will lie to compel a ministerial act, but it is an inappropriate remedy when the agency or entity has discretion. *Ahern v. Baker,* 148 Colo. 408, 366 P.2d 366 (1961).

Section 29–2–104 sets forth a general but not detailed procedure to be followed in submitting county wide sales tax revenue proposals to the electorate. Section 29–2–104(4), C.R.S.1998, provides:

> Upon being presented with a petition requesting a proposal for a countywide sales tax, use tax, or both signed by five percent of the registered electors of the county, the board of county commissioners *shall,* upon certification of the signatures on the petition, submit such proposal to the registered electors of the county.
>
> (emphasis added)

The Association asserts that, under the unambiguous meaning of § 29–2–104(4), the Board has a clear duty to present the initiative petition to the electorate subject only to the certification of the signatures. We agree.

In our view, the Commissioners' duty, as set forth in § 29–2–104(4), to submit the matter to the electorate upon certification by the Clerk and Recorder is ministerial and not discretionary in nature. This conclusion is mandated by the unaccompanied and unqualified use of the word "shall." It is not, in our view, within the prerogative of the Commissioners to pass on whether the petitions comply with the implementing statute or whether the implementing statute is constitutional.

There often exists a natural tension between a legislative body and the reserved powers of initiative and referendum. A legislative body may not take naturally or kindly to the notion that the electorate can take direct legislative action. Therefore, the submission of an initiated ballot proposal, or a proposed referendum, to the legislative body for discretionary review might well result in, as here, the proposal not being submitted to the electorate. *See* Colo. Const. art. V, § 1(5).

■ We further conclude that the Association has a clear right to the remedy of mandamus, and that there is no other available

remedy. The Commissioners and the Town do not dispute these matters.

Accordingly, we hold that relief in the nature of mandamus pursuant to C.R.C.P. 106(a)(2) will lie to compel the Commissioners to place the initiative on the ballot and that reversal of the trial court's order to the contrary is required.

## II.

■ Further, we conclude that judicial review of either the validity of the petitions or the procedure followed in the petitioning process would be premature.

■■ A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe, or to decide a case on speculative, hypothetical, or contingent set of facts. Also, courts will not generally examine the validity of a proposed initiative measure before it has been enacted. *Polhill v. Buckley,* 923 P.2d 119 (Colo.1996). Those issues will be ripe for adjudication only if the proposition is adopted.

In *McKee v. City of Louisville,* 200 Colo. 525, 528–29, 616 P.2d 969, 972–973 (1980), our supreme court stated that courts may not interfere with the exercise of the right to petition by "declaring unconstitutional or invalid a proposed measure before the process has run its course and the measure is actually adopted. Then and only then, when actual litigants whose rights are affected are before it, may the court determine the validity of the legislation."

■ Moreover, any court ruling on the validity of a proposed initiative may be perceived as engaging in an unwarranted judicial intrusion into a legislative process. Gordon & Magleby, *Pre–Election Judicial Review of Initiatives and Referendums,* 64 Notre Dame L.Rev. 298 (1989).

The wisdom of this restraint is illustrated by this case. Here, the Association submitted its petitions to place the issue on the 1995 ballot. The earliest the matter can now be considered by the electorate is 1999, and it is possible that consideration could be delayed until 2001 or beyond should there be further appeals.

## III.

Finally, the Association argues that it is entitled to attorney fees pursuant to C.R.C.P. 106(a)(2). We do not agree.

In the absence of any language in the rule explicitly authorizing attorney fees in mandamus actions, we hold that they are not permitted under provisions authorizing the award of damages in such actions. *See generally* Annot., 34 A.L.R.4th §5(b) at 469 (1985); *see also Commodore Mining Co. v. Reynolds*, 82 Colo. 77, 257 P. 259 (1927); *Wayne Township Board of Auditors v. Vogel*, 68 Ill. App.3d 714, 24 Ill.Dec. 887, 386 N.E.2d 91 (1979); *Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 246 N.W.2d 700 (1976); *Yates v. Durk*, 464 S.W.2d 43 (Mo.App. 1971); *Township of Marple v. Weidman*, 149 Pa. Cmwlth. 286, 613 A.2d 94 (1992); *Davis v. Peters*, 224 S.W.2d 490 (Tex.Civ.App.1949).

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded with directions to enter an order directing the Commissioners to place the initiative proposal on the ballot at the first and earliest opportunity.

Judge NEY and Judge KAPELKE concur.