The **BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF ARCHULE-TA, Colorado, and the Town of Pagosa Springs, a municipal corporation,** Petitioners,

v.

**COUNTY ROAD USERS ASSOCIATION, Earl Beasley, and F.T. Havens,** Respondents.

No. 99SC489.

Supreme Court of Colorado, En Banc.

Sept. 18, 2000.

Mary Deganhart–Weiss, Pagosa Springs, Colorado, Attorney for Petitioner Board of County Commissioners of the County of Archuleta, Colorado.

Collins, Cockrel & Cole, P.C., Robert G. Cole, Paul C. Rufien, Denver, Colorado, Attorneys for Petitioner Town of Pagosa Springs.

Abadie & Zimsky, LLC, William E. Zimsky, Durango, Colorado, Attorney for Respondents County Road Users Association, Earl Beasley, and F.T. Havens.

Chief Justice MULLARKEY delivered the Opinion of the Court,

We granted certiorari to review the opinion of the court of appeals in *County Road Users Ass'n v. Board of County Commissioners of the County of Archuleta*, 987 P.2d 861 (1998). The Respondents, the County Road Users Association, Earl Beasley, and F.T. Havens (collectively "CRUA"), brought an action in the nature of mandamus to compel the Co–Petitioners, the Board of County Commissioners of the County of Archuleta ("County"), to refer to the electorate an initiative proposal pertaining to a countywide sales tax. The Town of Pagosa Springs ("Town"), Co–Petitioners, intervened. The trial court granted the Town's summary judgment motion finding that the County had "no duty to present [the proposal] to the voters" because the proposal "did not comply with the requirements" of sections 29–2–101 to –112, 9 C.R.S. (1999) (County Sales Tax Act). The court of appeals reversed and ordered relief in the nature of mandamus pursuant to C.R.C.P. 106(a)(2), holding that the County has a ministerial duty under section 29–2–104(2) to present the proposal to the electorate and that judicial review of the proposal is premature.

We now hold that the court of appeals erred in concluding that the County has a ministerial duty to submit CRUA's proposal to the electorate and that the courts of this state are without jurisdiction to review proposed initiatives for compliance with the procedural requirements of the County Sales Tax Act. Additionally, we hold that CRUA's proposal failed to comply with the procedural requirements of the County Sales Tax Act. We reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

I.

On June 1, 1995, CRUA submitted to the Archuleta County Clerk and Recorder ("County Clerk"), the "text of a ballot issue" and proposed wording for the submission clause and ballot title.[1] The proposal seeks to amend county resolutions imposing coun-

---

1. CRUA submitted these items pursuant to the provisions of sections 1–40–101 to –134, 1B C.R.S. (1973 & Supp.1994). Unbeknownst to CRUA and to the county officials that subsequently acted upon CRUA's submission, the General Assembly amended these provisions prior to CRUA's submission to eliminate the authority of the county to act pursuant to these statutory provisions. *See* ch. 120, secs. 2–23, §§ 1–40–102 to –133, 1995 Colo. Sess. Laws 430, 430–39. Not until the signed petition was presented to the Archuleta County Clerk and Recorder, well after the initial submission of the proposed draft of the petition and the subsequent approval by the county, did CRUA or the county reference the County Sales Tax Act as authority for the proposed initiative.

tywide sales taxes approved by the voters of Archuleta County in 1968, 1983, and 1994. Those resolutions establish an aggregate county sales tax of four percent, distributed equally to the county and the town. The CRUA proposal alters this distribution by allotting seventy-five percent of the sales tax revenue to the county and twenty-five percent to the town. Additionally, the proposal requires the county to distribute two-thirds of its portion of the tax revenue into the Archuleta County Sales Tax County Road Capital Improvement Fund, and one-third into the general revenue fund of Archuleta County.[2]

The County approved CRUA's title submission and petition format, purportedly under the authority of repealed portions of sections 1–40–106(2), 1–40–106(3)(b), and 1–40–113. After circulating the petition to place the initiative on the ballot and obtaining the requisite number of signatures, CRUA submitted the petition and signatures to the County Clerk. At this time, CRUA referenced for the first time its authority to initiate countywide sales tax legislation pursuant to section 29–2–104 of the County Sales Tax Act. The County Clerk subsequently approved a sufficient number of signatures to satisfy the five-percent requirement of section 29–2–104(1).

On August 22, 1995, the Board of County Commissioners denied CRUA's request to place the proposal on the ballot for the November 7, 1995, county election.[3]

CRUA filed a complaint in district court seeking an order in the nature of mandamus under C.R.C.P. 106(a)(2) to compel the County to place the proposal on the ballot. CRUA alleged that the County has a ministerial duty to submit the proposal to the electors of the county after CRUA satisfied the signature requirement of section 29–2–104(4).

The trial court granted the Town's motion for summary judgment and dismissed CRUA's complaint. The court found that CRUA's "petition did not comply with the requirements of Section 29–2–101, C.R.S., et seq., and thus the County has no duty to present it to the voters."

The court of appeals reversed the trial court order, holding that section 29–2–104(4) created in the County a ministerial duty to submit the proposal to the electorate after CRUA complied with the signature require-

---

**2.** The text of the proposal is as follows:

Effective January 1, 1996, the resolutions approved by the Board of County Commissioners for the County of Archuleta ("the Board") on May 6, 1968, concerning a one percent (1%) sales tax, July 29, 1983 (Resolution 83–47) and September 6, 1994 (Resolution 94–34), such resolutions approved by the voters of Archuleta County on June 25, 1968, September 6, 1983 and November 7, 1994, respectively, which have imposed countywide sales taxes, such countywide sales taxes currently set at an aggregate rate of four percent (4%), are hereby amended as follows:

a) The formula for the distribution of revenues collected from all Archuleta countywide sales taxes set forth in said resolutions approved by the voters of Archuleta County shall be revised and amended to provide that seventy-five percent (75%) of the revenues collected from all such countywide sales taxes shall be distributed to the County of Archuleta and twenty-five percent (25%) of the revenues collected from all such countywide sales taxes shall be distributed to the Town of Pagosa Springs; and

b) Two-thirds of all revenues collected from all countywide sales taxes which are distributed to the County per subsection (a) hereof shall be deposited in the Archuleta County Sales Tax

County Road Capital Improvement Fund as established in Section 31–15–501(1)(c)(b) of Resolution 94–34, such revenues to be used only for the purposes set forth in Section 31–15–501(1)(c)(b) of Resolution 94–34. One-third of all revenues collected from all countywide sales taxes which are distributed to the county per subsection (a) hereof shall be deposited in the general revenue fund of the County.

**3.** The parties allege different reasons for the County's decision to deny CRUA's request to place the petition on the ballot. The County alleged that it premised its denial on the following grounds: (1) section 29–2–101 to –113 is unconstitutional on its face; (2) CRUA did not have authority to seek a "general county initiative" under the laws and constitution of Colorado; (3) the proposal is administrative rather than legislative in nature and, therefore, is not the proper subject for a ballot initiative; and (4) CRUA did not comply with the requirements of section 29–2–101 to –113. CRUA asserts that the County denied the proposal because (1) section 29–2–104 is unconstitutional, and (2) section 29–2–104 does not grant the power to petition County to amend a countywide sales tax that the voters have previously approved.

ment of that section. Thus, determined the court of appeals, the County does not have authority to "pass on whether the petitions comply with the implementing statute or whether the implementing statute is constitutional." *County Road Users Ass'n*, 987 P.2d at 864. The court of appeals additionally held that "judicial review of either the validity of the petitions or the procedure followed in the petitioning process would be premature." *Id.*

We granted certiorari to consider whether the court of appeals erred in holding that (1) the County has a mandatory ministerial duty to submit CRUA's proposal to the electorate of the county, (2) the court lacks jurisdiction to determine the validity of CRUA's proposal, and (3) the County has a duty to submit the proposal to the electorate despite its purported failure to comply with the statutory criteria of section 29-2-101 to -112.[4] We now hold that the County Sales Tax Act imposes a discretionary duty on a county to review a proposal for compliance with the procedural requirements of the County Sales Tax Act prior to presenting the proposal to the electorate. We further hold that courts maintain jurisdiction to determine whether a ballot initiative complies with the procedural provisions of the County Sales Tax Act. Finally, we conclude that CRUA's proposal fails to comply with these procedural requirements. We reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

## II.

■ Article V, section 1 of the Colorado Constitution vests the legislative power of the state in the General Assembly, *see* Colo. Const. art. V, § 1(1), but reserves to the people the power to initiate statewide legislation, *see id.* § 1(2). This initiative power is

further reserved to "the registered electors of every city, town, and municipality as to all local, special, and municipal legislation." *Id.* § 1(9). This right is of the first order, *see id.* § 1(2); "it is not a grant to the people but a reservation by them for themselves," *McKee v. City of Louisville,* 200 Colo. 525, 529, 616 P.2d 969, 972 (1980).

■ The list of affected governmental units does not include counties, and this court has not recognized any constitutional initiative powers reserved to the people over countywide legislation. *Cf. People ex rel. Cheyenne Erosion Dist. v. Parker,* 118 Colo. 13, 18–19, 192 P.2d 417, 420 (1948) (narrowly construing the scope of the initiative powers reserved by article V, section 1). By legislative enactment, however, through the County Sales Tax Act the General Assembly has granted to the people the statutory right to initiate countywide legislation in order to assess a sales tax. Because this right is a statutory grant of authority to initiate legislation, it is limited and defined by the procedural and substantive provisions of that statute. It is through this act that CRUA seeks to initiate the legislation at issue in this case.

Several issues present themselves in the case before us. First is the propriety of the court of appeals' issuance of relief in the nature of mandamus compelling the Commissioners to place the initiative on the ballot. Second is whether the court of appeals properly limited the jurisdictional ability of a court to review a proposed initiative for compliance with the procedural provisions of the County Sales Tax Act. We address these issues in turn. Finally, in light of our holdings with respect to the preceding issues and for the sake of judicial economy, we address whether CRUA's proposal satisfies the procedural requirements of the County Sales Tax Act.[5]

---

4. We granted certiorari on the following issues:
   (1) Whether the court of appeals erred by refusing to render an opinion, because it lacked jurisdiction, as to the validity of the "proposal" submitted by respondents seeking an amendment to Archuleta County's sales tax.
   (2) Whether the court of appeals erred in finding that Archuleta County had a mandatory ministerial duty to submit respondents' "proposal" to amend the county's sales tax to the registered electors of the County.

   (3) Whether the court of appeals erred in finding that a county has a duty to submit a sales tax proposal that does not meet the statutory criteria of §§ 29-2-101 to -112, 9 C.R.S. (1999).

5. For the purposes of this opinion, we assume without deciding that the amendments proffered by CRUA constitute a "sales tax" within the meaning of the County Sales Tax Act.

## A.

CRUA seeks relief in the nature of mandamus to compel the County to place the petition before the electorate. *See* C.R.C.P. 106(a)(2) (allowing a district court to compel a governmental body to perform an act that the law specially enjoins as a duty resulting from office); *see also In re People ex rel. B.C.,* 981 P.2d 145, 149 (Colo.1999) (recognizing that the substantive application of remedial writs survived the abolishment of the technical pleading requirements by C.R.C.P. 106). Mandamus is an extraordinary remedy which may be used to compel performance by public officials of a plain legal duty devolving upon them by virtue of their office or which the law enjoins as a duty resulting from the office. *See State v. Board of County Comm'rs of Mesa County,* 897 P.2d 788, 791 (Colo.1995). Mandamus is appropriate upon the satisfaction of a three-part test: (1) the plaintiff must have a clear right to the relief sought, (2) the defendant must have a clear duty to perform the act requested, and (3) there must be no other available remedy. See *id.;* see also *Gramiger v. Crowley,* 660 P.2d 1279, 1281 (Colo.1983). Mandamus lies to compel the performance of a purely ministerial duty involving no discretionary right and not requiring the exercise of judgment. It does not lie where performance of a trust is sought which is discretionary or involves the exercise of judgment. *See Lindsey v. Carlton,* 44 Colo. 42, 48, 96 P. 997, 999 (1908); *see also Ahern v. Baker,* 148 Colo. 408, 414, 366 P.2d 366, 369 (1961).

At issue in this case is the second prong of the test: whether, under the facts presented, the County had a clear, non-discretionary duty to submit the proposal to the electorate.[6] The court of appeals held that section 29–2–104(4) imposes a ministerial duty upon the County to submit the proposal to the electorate after collection of the requisite number of signatures. *See County Road Users Ass'n,* 987 P.2d at 864. Because it is not disputed that CRUA complied with the signature requirement of the County Sales Tax Act, the court of appeals held that relief in the nature of mandamus will lie to compel

the County to place the initiative on the ballot. See *id.; see also* C.R.C.P. 106(a)(2). Our construal of the Sales Tax Act compels a different conclusion.

The County Sales Tax Act generally authorizes counties to levy a county sales tax if a majority of the county's electorate approves the sales tax proposal. *See* § 29–2–103(1). The Act provides for the referral of the proposal to the electorate either by resolution of the board of county commissioners or through the citizen initiative process. *See* § 29–2–104(1). Relevant to the citizen initiative process, section 29–2–104(4) provides as follows:

> Upon being presented with a petition requesting a proposal for a countywide sales tax, use tax, or both signed by five percent of the registered electors of the county, the board of county commissioners shall, upon certification of the signatures on the petition, submit such proposal to the registered electors of the county. The proposal shall be submitted at the next general election if there is one within one hundred twenty days of the filing of the petition. If no general election is scheduled within one hundred twenty days following the date of filing of the petition, the board of county commissioners shall submit such proposal at a special election called not less than thirty days nor more than ninety days from the date of filing of the petition.

§ 29–2–104(4). Relying on this subsection, the court of appeals held that "the unaccompanied and unqualified use of the word 'shall' " in section 29–2–104(4) imposes a "ministerial and not discretionary" duty on the County to refer the CRUA proposal to the electorate.

Read in isolation, section 29–2–104(4) may support the view of the court of appeals that the statute imposes a ministerial duty on the Commissioners to submit an initiative proposal to the electorate upon satisfaction of the signature requirement. However, in interpreting a statute we must construe the various parts of a statute to give consistent,

---

6. As noted by the court of appeals, the parties do not dispute that CRUA has a clear right to seek the remedy of mandamus and that there is no other available remedy.

harmonious, and sensible effect to the statute as a whole. *See Lagae v. Lackner,* 996 P.2d 1281, 1284 (Colo.2000). Such a reading reveals several provisions that the General Assembly has directed must be included in a valid proposal.

Section 29–2–104(2) requires that the proposal "state the amount of tax to be imposed." § 29–2–104(2). Significant to the case before us, section 29–2–104(2) also mandates that the "proposal shall contain a description of the tax in accordance with the provisions of this article." *Id.* Additional sections list provisions that "shall" be included in a proposal. A "proposal shall include": a "provision imposing a tax on the sale of tangible personal property or furnishing of services," § 29–2–105(1)(a); a provision that "all retail sales are consummated at the place of business of the retailer," § 29–2–105(1)(b); a provision that "the amount subject to tax shall not include the amount of any sales tax imposed [under another statutory provision]," § 29–2–105(1)(c); a provision defining the property and services subject to the tax, § 29–2–105(1)(d); a provision expressing the relationship between the sales tax and specific ownership taxes, § 29–2–105(1)(e); and a provision stating that the sales tax rate is limited to stated rates within municipalities in which the total sales tax will exceed seven percent, § 29–2–105(1)(f).

Thus, in enacting the County Sales Tax Act, the General Assembly set forth specific provisions that must be included in a proposal before that proposal may be presented to the electorate. It follows that purported proposals that do not contain these provisions are not "proposals" within the meaning of the statute. Because the County is statutorily obligated, after satisfaction of the signature requirement, to "submit such *proposal* to the registered electorate of the county," § 29–2–104(4)(emphasis added), this duty arises only with respect to valid proposals. Performing that duty necessarily requires limited review by the County to ensure that proposals comply with the procedural requirements established by the General Assembly, including whether a proposal contains the provisions specifically listed in the County Sales Tax Act.

Interpreting the County Sales Tax Act, as did the court of appeals, to preclude the County from reviewing purported proposals for compliance with the procedural requirements of the County Sales Tax Act would potentially require the County to submit to the voters proposals having no relationship to a county sales tax. Such an interpretation would lead to absurd results and, therefore, is contrary to our rules of statutory construction. *See AviComm, Inc. v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo. 1998) ("[A] statutory interpretation that defeats the legislative intent or leads to an absurd result will not be followed.").

Thus, the court of appeals erred in concluding that the County Sales Tax Act imposes merely a ministerial duty on the County to submit a proposed initiative to the electorate upon satisfaction of the signature requirement. Rather, the County has a duty to review proposed initiatives for compliance with the procedural requirements of the County Sales Tax Act, including the inclusion of the provisions set forth in section 29–2–105.

### B.

The court of appeals refused to address whether the proposal complies with the County Sales Tax Act, holding that "judicial review of either the validity of the petitions or the procedure followed in the petitioning process would be premature." *County Road Users Ass'n,* 987 P.2d at 864. Specifically, the court noted that "[a] court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe, or to decide a case on speculative, hypothetical, or contingent set of facts." *Id.*

Indeed, this court on several occasions has determined that the judiciary does not have jurisdiction to review the substance of initiatives or referenda prior to their approval by the electorate. For example, in *McKee,* this court held:

Nor may the courts interfere with the exercise of this right [to initiate legislation] by declaring unconstitutional or invalid a proposed measure before the process has

run its course and the measure is actually adopted.

200 Colo. at 530, 616 P.2d at 972; *see also Polhill v. Buckley*, 923 P.2d 119, 121–22 (Colo.1996); *City of Rocky Ford v. Brown*, 133 Colo. 262, 265–66, 293 P.2d 974, 976 (1956). As the following discussion indicates, however, these cases do not compel the conclusion drawn by the court of appeals—that courts are without jurisdiction to review initiative proposals for procedural compliance with the County Sales Tax Act prior to adoption by the electorate.

The cases expounding the principles utilized by the court of appeals to deny jurisdiction differ from the case at issue today in two important respects. First, those cases addressed initiatives and referenda founded in the general, constitutional reservation of the right to initiate legislation contained in article V, section 1 of the Colorado Constitution. *See* Colo. Const. art. V, § 1; *see also Polhill*, 923 P.2d at 120 & n. 1; *McKee*, 200 Colo. at 529, 616 P.2d at 972. This court has recognized the breadth of this power and the correspondingly limited review by the judicial system. *See, e.g., McKee*, 200 Colo. at 530, 616 P.2d at 972. As we stated in *McKee*:

> By the express provisions of the Colorado Constitution the people have reserved for themselves the right to legislate.... Like the right to vote, the power of initiative is a fundamental right at the very core of our republican form of government.... This court has always liberally construed this fundamental right, and concomitantly, we have viewed with the closest scrutiny any governmental action that has the effect of curtailing its free exercise.

*Id.* In this constitutional context, we have generally limited the scope of judicial review of pending initiatives and referenda to constitutional or statutory grants of such review authority. *See Polhill*, 923 P.2d at 121–22.

This case, on the other hand, implicates the statutory grant of authority—as opposed to the constitutional reservation of the general right of initiative—to initiate countywide legislation in the area of sales tax. *Compare* Colo. Const. art. V, § 1 *with* § 29–2–104. This right of initiative extends only to the

limits of that statute, and therefore, the exercise of that statutory power of initiative must comply with that statute. A district court, pursuant to its power to compel performance by a government official through a writ in the nature of mandamus, has jurisdiction to review the actions of that official. *See* C.R.C.P. 106(a)(2). Because we have found authority in the county to review a proposal for procedural compliance with the County Sales Tax Act, *see* discussion, *supra*, Part II.A, a district court has jurisdiction to review the action of that official. Furthermore, jurisdiction also lies in the district courts, as courts of general jurisdiction, *see* Colo. Const. art. VI, § 9, to ensure compliance with the County Sales Tax Act. *See Meyer v. Lamm*, 846 P.2d 862, 868–71 (Colo.1993). As noted in *Meyer*:

> [Article VI, section 9] confer[s] unrestricted and sweeping jurisdictional powers in the absence of limiting legislation. The absence of a statute or constitutional provision which specifically designates a forum or spells out standards for decision will not preclude exercise of a court's jurisdiction.... While jurisdiction may be limited by the legislature, no statute will be held to so limit court power unless the limitation is explicit.

*Id.* at 869 (quoting *In re A.W.*, 637 P.2d 366, 373–74 (Colo.1981)).

The judiciary's jurisdiction, however, is not without limitation. Relevant to the case before us, courts may not issue advisory opinions over cases that are not yet ripe. *See Bickel v. City of Boulder*, 885 P.2d 215, 234 (Colo.1994) ("[T]his court is not empowered to give advisory opinions based on hypothetical fact situations."). *But see* Colo. Const. art. VI, § 3 (authorizing the Colorado Supreme Court to issue an advisory opinion "upon solemn occasions when required by the governor, the senate, or the house of representatives").

It is on this basis that the court of appeals found no jurisdiction, relying primarily on *McKee* for the proposition that judicial intervention prior to electorate approval is outside the scope of the power of the judiciary because such action is not ripe for adjudication and, therefore, represents an unauthorized

advisory opinion. *See County Road Users Ass'n,* 987 P.2d at 864; *see also McKee,* 200 Colo. at 530, 616 P.2d at 973 (recognizing that only after a measure is adopted, "when actual litigants whose rights are affected are before it, may the court determine the validity of the legislation"); *Rocky Ford,* 133 Colo. at 266, 293 P.2d at 976 ("The separation of governmental powers must be held inviolate, therefore the trial court or this court may not intrude upon the legislative powers through an advisory opinion.").

This implicates the second basis for distinguishing the cases relied upon by the court of appeals to limit the jurisdiction of the judiciary. These cases involved substantive challenges to initiatives prior to their enactment. *See McKee,* 200 Colo. at 531–33, 616 P.2d at 973–75; *see also City of Rocky Ford,* 133 Colo. at 263, 293 P.2d at 975.[7]

This case, on the other hand, addresses procedural compliance with a statute granting the right of initiative. It does not raise the ripeness concerns raised by the other cases. We recognized in *Polhill* that in an appropriate case, the court might be required to exercise its equitable powers if no adequate remedy was provided by the administrative process. *See Polhill,* 923 P.2d at 122. The case now before us is one such case because there is no statutory review provided to address the situation in which the county refuses to place a proposed initiative on the ballot. If the county has erred but the court cannot act to correct that error, the initiative proponents have no way to put the issue before the voters.

Thus, rather than opining as to the potential substantive effect of the initiative should it be enacted, a challenge asserting non-compliance with statutory initiative procedures of the County Sales Tax Act addresses whether the proponents of the initiative maintain the ability—through compliance with the statutory procedural requirements—to engage in the initiative process. *See* James D. Gordon III & David B. Magleby, *Pre–Election Judicial Review of Initiatives and Referendums,* 64 Notre Dame L.Rev. 268, 314 (1989). This present controversy is ripe for review by the judiciary. *Cf. People v. Saint–Veltri,* 945 P.2d 1339, 1343 (Colo.1997) ("It is axiomatic that 'courts exist for the purpose of deciding live disputes involving "flesh-and-blood" legal problems with data "relevant and adequate to informed judgment." ' ") (quoting *Denver v. Consolidated Ditches Co.,* 807 P.2d 23, 38 (Colo.1991)).

Thus, jurisdictional concerns do not bar competent courts of this state from reviewing a proposal for compliance with the procedural mandates of the County Sales Tax Act. With this understanding of the scope of judicial review, we turn our attention to whether the court of appeals appropriately ordered the County to present the initiative to the electorate.

### C.

Rather than remanding this case for a determination as to whether the proposal satisfies the procedural requirements of the County Sales Tax Act, in the interest of judicial economy we address this issue at this time. *See, e.g., People v. Newton,* 966 P.2d 563, 570 n. 8 (Colo.1998).

CRUA does not dispute that the descriptions required under sections 29–2–104 to –105 were not included in the CRUA proposal. Indeed, a cursory review of the proposal reveals that the proposal does not include those provisions. *Compare* discussion, *supra,* note 2 (reproducing the text of CRUA's proposal) *with* § 29–2–105(a) to (f) (requiring the inclusion of several provisions in a valid proposal). Rather, CRUA argues that the existing sales tax measures now in force contain the required descriptions, and therefore, the proposal, as an amendment to

---

7. *Polhill* is not inconsistent with our analysis of the case now before us. In *Polhill,* we declined to address whether a referendum failed to comply with the single subject rule of article XIX, section 2(3) of the Colorado Constitution. The referendum was a proposed constitutional amendment passed by the legislature and referred to the voters for their approval pursuant to Article XIX, Section 2(1) of the Colorado Constitution. *See Polhill,* 923 P.2d at 121–22. As we stated in *Polhill,* there was an adequate post-election remedy because the amendment could be challenged on single subject grounds after it was adopted by the voters. *See Polhill,* 923 P.2d at 122.

those measures, need not repeat the provisions required under the County Sales Tax Act.

We find this argument unpersuasive. The County Sales Tax Act does not provide for the incorporation of the provisions in the fashion argued by CRUA. Because the plain language of the Act mandates inclusion of these provisions in proposals submitted under the authority of the Act, we decline to read the incorporation language into the statute. *See, e.g., Swieckowski v. City of Fort Collins,* 934 P.2d 1380, 1387 (Colo.1997) ("[This court is] constrained by limiting principles of judicial review to interpret statutory language consistently with the intent of the General Assembly and with the plain meaning of the words chosen by this body when it enacts a statute.").

Because the CRUA proposal fails to comply with the procedural requirements of the County Sales Tax Act, the court of appeals erred in issuing relief in the nature of mandamus by ordering the County to present the proposal to the electorate.

### III.

For these reasons, the judgment of the court of appeals is reversed and the case remanded for proceedings consistent with this opinion.