23CA2011 Fernandez v CDOC 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2011
El Paso County District Court No. 23CV224
Honorable David A. Gilbert, Judge

Marcus J. Fernandez,

Plaintiff-Appellant,

v.

Executive Director of Colorado Department of Corrections and Warden of the
Buena Vista Correctional Facility,

Defendants-Appellees

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Marcus J. Fernandez, Pro se

Philip J. Weiser, Attorney General, Rebekah Ryan, Assistant Attorney General,
Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Marcus J. Fernandez, sued the Colorado Department of Corrections (CDOC) regarding its calculation of his parole eligibility date (PED) for the two sentences he is currently serving. Defendants, the CDOC's Executive Director and the Warden of the Buena Vista Correctional Facility, moved to dismiss Fernandez's suit under C.R.C.P. 12(b)(5).  The district court granted the motion and dismissed his complaint.  We affirm.

## I.     Background and Sentencing

¶ 2     A jury convicted Fernandez of first degree felony murder and first degree aggravated motor vehicle theft for acts committed when he was fifteen.  The trial court originally sentenced him to concurrent sentences of life without the possibility of parole and sixteen years in the custody of the CDOC for his respective convictions.  After Colorado amended its statutes to prohibit mandatory life sentences without the possibility of parole for juvenile offenders, Fernandez was resentenced to forty-six years for the felony murder, again running concurrently with the sixteen-year-motor-vehicle-theft sentence.  Both sentences began to run on the same date.

¶ 3     Fernandez's PED for his vehicle theft sentence is controlled by section 17-22.5-403(1), C.R.S. 2024, which says that he will be eligible for parole after completing fifty percent of his sixteen-year sentence.  But his PED for the felony murder sentence is controlled by section 17-22.5-403(2)(c)(I), which says that a resentenced juvenile is not entitled to a sentence reduction for his PED.  In other words, he is not entitled to any reduction of his forty-six-year sentence before he will be eligible for parole.

¶ 4     The CDOC used Fernandez's forty-six-year sentence as his controlling sentence and calculated his PED as falling at the end of that sentence, adjusted for other credits and reductions.  Fernandez disagreed with that calculation and filed a petition for a writ of mandamus to direct the CDOC to recalculate his PED to give effect to both provisions in section 17-22.5-403.  His request in the district court — repeated on appeal — is to have the CDOC make his PED eight years earlier than the end of his forty-six-year sentence.  He argues that this will give effect to the fifty percent reduction of his sixteen-year sentence as well as the forty-six-year sentence itself.

¶ 5    The CDOC filed a motion to dismiss the case under Rule 12(b)(5), arguing that Fernandez was not entitled to his requested relief as a matter of law.  The trial court granted the motion and dismissed the case.

## II.    Analysis

¶ 6    Fernandez contends that the district court erred by denying his petition for a writ of mandamus because the CDOC did not apply the proper method of calculating his PED.

### A.    Standard of Review and Applicable Law

¶ 7    "We review a trial court's ruling on a motion to dismiss de novo, 'applying the same standards as the trial court.'"  *Sch. Dist. No. 1 v. Masters*, 2018 CO 18, ¶ 13 (quoting *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)).  We must "accept all allegations of material fact as true and view the allegations in the light most favorable to the plaintiff."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999).  "Dismissal is proper when the plaintiff's factual allegations cannot support a claim as a matter of law."  *Graham v. Maketa*, 227 P.3d 516, 518 (Colo. App. 2010).

¶ 8    "Mandamus is an extraordinary remedy that requires public officials to perform plain legal duties they owe by virtue of their

offices." *Owens v. Carlson*, 2022 CO 33, ¶ 21 (citing *Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000)). "While mandamus is available to compel the performance of 'a purely ministerial duty involving no discretionary right' and requiring no 'exercise of judgment,' it is not available to compel the performance of a task that 'is discretionary or involves the exercise of judgment.'" *Id.* (quoting *Cnty. Rd. Users Ass'n*, 11 P.3d at 437).

¶ 9 A plaintiff seeking mandamus relief bears a demanding burden to satisfy a three-part test: (1) the plaintiff must have "a clear right" to the relief sought; (2) the defendant must have "a clear duty" to perform the act requested; and (3) there can be no other remedy available. *Id.* (quoting *Cnty. Rd. Users Ass'n*, 11 P.3d at 437).

### B. The Governing Sentence Determines Fernandez's Parole Eligibility Date

¶ 10 Fernandez argues that he has a clear right to recalculation of his PED because the CDOC's use of the longer of his two sentences as the parole-determining sentence is improper. He also proposes an alternative method for calculating his PED. But because the Colorado Supreme Court has allowed for the use of the governing

sentencing method in sentencing situations like Fernandez's, we disagree and resolve his case at this initial step.

¶ 11    The one continuous sentence rule governs Fernandez's case: "[W]hen any inmate has been committed under several convictions with separate sentences, the [CDOC] shall construe all sentences as one continuous sentence." § 17-22.5-101, C.R.S. 2024. The legislature did not define the phrase "one continuous sentence"; however, the Colorado Supreme Court has approved of various methodologies that satisfy this requirement.

¶ 12    One such method relies on the governing sentence, which applies when an inmate has multiple sentences "with incompatible [sentencing] provisions governing the service of those sentences." *Exec. Dir. of Colo. Dep't of Corr. v. Fetzer*, 2017 CO 77, ¶ 13. In such a case, the CDOC uses the sentence with the longest incarceration effect as controlling for parole eligibility. *Id.* Additionally, "[i]n the case of concurrent sentences, [the supreme court] ha[s] said that 'concurrent sentences obviously commence at the same time and in functional effect result in one term of imprisonment represented by the longest of the concurrent sentences imposed.'" *Vaughn v. Gunter*, 820 P.2d 659, 661 (Colo.

6

1991) (quoting *Schubert v. People*, 698 P.2d 788, 795 (Colo. 1985)). "The longest of the concurrent sentences also is described as the 'governing' sentence." *Id.* While the CDOC is not required to use the governing sentence methodology, it is one available tool that it may apply. *See Fetzer*, ¶ 21.

¶ 13    Simply put, the governing sentence methodology applies when a party has multiple concurrent sentences with the same start date, controlled by conflicting parole eligibility or other sentencing frameworks. *See id.* at ¶¶ 13-16; *Vaughn*, 820 P.2d at 661.

¶ 14    Fernandez's two sentences fit exactly within this methodology's contours. Both sentences have the same start date. Taken together, they constitute his composite continuous sentence. His sixteen-year-vehicle-theft sentence, with parole eligibility after he has served fifty percent of the sentence, is incompatible with his forty-six-year-felony-murder sentence, which is ineligible for early release. Thus, the CDOC properly used Fernandez's felony murder sentence as the governing sentence when determining his PED. *See Fetzer*, ¶ 15.

¶ 15    We understand Fernandez's argument that the CDOC may not just use his longer sentence but instead must construct a single

composite sentence. We agree that the CDOC may not simply use the longest sentence, *see id.* at ¶ 21, but that's not what's happening here (though as a practical matter it has the same effect in this case). The supreme court has held that using the governing sentence is an allowable application of the one continuous sentence framework rather than the impermissible use of the longest sentence. *See id.* at ¶ 16. As the court said in *Fetzer,*

> [T]he composite governing sentence has always controlled as an application of — not a substitute for — the statutorily required one continuous sentence. In those few cases in which we have approved reliance on an inmate's longest sentence to determine the applicable credit or sentencing scheme, the longest or governing sentence has had either the earliest effective date of all the inmate's separate sentences or an effective date coinciding with those of the inmate's other separate sentences, and therefore *the starting point of the governing sentence coincided with the starting point of the composite continuous sentence.*

*Id.* (emphasis added) (citations omitted).

¶ 16     Because Fernandez's concurrent sentences have the same start date, the CDOC's use of his longest sentence to calculate his PED comports with the governing sentence framework and the one continuous sentence requirement.

¶ 17     Finally, Fernandez also proposes alternative sentencing methodologies and submits well-written arguments for why he believes they would be better than the system provided by the legislature and implemented by the CDOC.  However, "[c]ourts may not rewrite statutes to improve them."  *Yen, LLC v. Jefferson Cnty. Bd. of Comm'rs*, 2021 COA 107, ¶ 38 (quoting *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008)).  And as the supreme court has instructed, "[w]hether or not other systems of determining the applicable parole statutes and applying them to the composite continuous sentences mandated by section 17-22.5-101 might also be acceptable, unless the methodology selected by the [CDOC] contravenes a statute or the constitutional rights of an inmate, it will be upheld."  *Fetzer*, ¶ 20.  Fernandez's policy arguments therefore cannot be the basis for reversal in this case.

¶ 18     Thus, Fernandez is not clearly entitled to a recalculation of his PED.  And because he has failed to satisfy the first prong of the mandamus test — demonstrating a clear right to the relief sought — we discern no error in the trial court's dismissal of his claim.

### III.    Disposition

The judgment is affirmed.

JUDGE HARRIS and JUDGE YUN concur.